J-S79002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF: J.M.W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: D.W., FATHER | : : : : : : : | |
| | : | No. 2855 EDA 2017 |

Appeal from the Decree August 22, 2017
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2017-A0012

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 28, 2017**

D.W. ("Father") appeals from the order, entered in the Court of Common Pleas of Montgomery County, granting the Montgomery County Office of Children and Youth's ("OCY") petition requesting termination of Father's parental rights to J.M.W. ("Child") (born April 2011), pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (2).  After careful review, we affirm.

K.L.W. ("Mother")[1] and Father are not married, and Child was born while Father was incarcerated; Father has never met Child.  On February 2, 2017, OCY filed a petition requesting termination of Father's parental rights to Child pursuant to sections 2511(a)(1) and (2).  On June 15, 2017, the Honorable Lois E. Murphy met and interviewed Child.  On June 21, 2017, the trial court

_____

[1] Mother, who suffers from mental health issues, is unable to sustain herself and live independently and has not been able to meet the needs of Child throughout Child's life; consequently, the trial court terminated her parental rights on August 21, 2107.  N.T. Termination Hearing, 8/22/17, at 25-26.

held a permanency review hearing and granted OCY's request to change Child's goal to adoption, and, on the same day, the trial court held an evidentiary hearing on OCY's petition to terminate Father's parental rights. On August 22, 2017, the trial court terminated Father's parental rights to Child. Father filed a timely notice of appeal on September 19, 2017. Both Father and the trial court have complied with Pa.R.A.P. 1925.[2] On appeal, Father raises the following issue: Whether the trial court committed an error of law and/or abuse of discretion when it terminated Father's parental rights pursuant to sections 2511(a)(1) and (2).

Section 2511 governs the termination of parental rights:

**§ 2511. Grounds for involuntary termination**

(a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

---

[2] Judge Murphy's Pa.R.A.P. 1925(a) opinion was verbally set forth in the record on August 22, 2017. N.T. Termination Hearing, 8/22/17. Judge Murphy's on-record verbal declaration of her reasoning for terminating Father's parental rights to Child satisfies Rule 1925(a) and Pa.R.A.P. 905(a)(2) for the purpose of this appeal.

> causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> * * * * * *

> (b) Other considerations.— The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1) and (2), (b). *See In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000).

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation and quotation marks omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S.A. § 2511(a) exists and that termination

- 3 -

promotes emotional needs and welfare of child set as forth in 23 Pa.C.S.A. § 2511(b)).

Termination under section 2511(a)(1) involves the following:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006). In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citation omitted).

The focus of the termination proceeding is on the conduct of the parent and whether his conduct justifies termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001); *In re Child M.*, 681 A.2d 793, 797 (Pa. Super. 1996). Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. *In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super.

1999). The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. *Id.* at 285. *See Adoption of M.S.*, 644 A.2d 1370 (Pa. Super. 1995) (failure of parent to have contact with child for six months will not automatically forfeit that parent's rights). *See also In re Shives*, 525 A.2d 801, 803 (Pa. Super. 1987) (where non-custodial parent faces termination of parental rights, court must consider non-custodial parent's explanation for apparent neglect, including whether custodial parent has deliberately created obstacles and erected barriers intended to impede communication and association between non-custodial parent and child).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental right on the child pursuant to section 2511(b). *Matter of Adoption of Charles E.D.M., II*, 70 A.2d 88, 91 (Pa. 1998).

The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797

A.2d 326 (Pa. Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. Furthermore, under section 2511(a)(2), the petition for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the cause of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998).

Instantly, Father has never met with, provided financial resources for, or corresponded or sent gifts to Child. Father avers that he attempted to contact Mother when he was released from prison in July 2015, but that maternal grandmother and law enforcement prevented him from contacting Child due to his probation status.[3] When Father completed his probation and parole on March 21, 2016, he did not contact Mother or Child for more than a year afterward. Furthermore, Father did not attempt to file a custody petition, did not contact OCY, did not request visits with Child and did not provide support for Child. *See In re J.W., A.W., V.W. and J.W.*, 578 A.2d 952 (Pa. Super. 1990) ("[A] parent who cannot or will not meet the irreducible minimum requirement set by the Juvenile Act within a reasonable time

---

[3] Father has a criminal record for terroristic threats, 18 Pa.C.S.A. § 2706, and two misdemeanors, one of which was for corruption of minors, 18 Pa.C.S.A. § 6301.

following state intervention may properly . . . have parental rights terminated.").

Presently, Father has completed parenting classes, found employment as a full-time landscaping contractor, acquired health insurance and maintains a stable residence in a rented room in North Wales. However, beyond these measures, Father failed to demonstrate to the trial court that he is prepared and ready to fulfill a parental role. Father does not live in a home that includes space for a child; his residence is not ready for parenting or providing safety and stability for Child. Additionally, Father has not addressed his substance abuse and depression issues as is necessary to prepare him to parent Child. Father, in summary, is unable to provide the basic minimum needs that Child is entitled to, including adequate housing, clothing, food, love and supervision. *See In re Diaz*, 669 A.2d 372 (Pa. Super. 1995).

Additionally, the fact that Father was frequently incarcerated between 2011 and 2015 does not excuse his failure to contact or provide support for Child. The trial court, in addressing Father's periods of incarceration, stated that "'a parent has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child.'" N.T. Termination Hearing, 8/22/17, at 21, quoting *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012). Although Father is no longer incarcerated, the lengthy term of his incarcerations and his failure to contact Child or OCY following his release from probation and parole indicate that he has failed to provide for Child. The trial court may properly reject as untimely or

disingenuous Father's present desire to cooperate and provide for Child after a long period of uncooperativeness and absence from Child's life. *See In re Adoption of K.J.*, 936 A.2d 1128 (Pa. Super. 2007).

Moreover, Kristen Caprara, Ph.D., a licensed clinical psychologist who has been treating Child since January 18, 2017, met with Father on May 5, 2017. After meeting with both Father and Child, Dr. Caprara believes that Father should focus solely on his own mental health treatment, and that it would not be in Child's best interest for Father to assume the role of Child's full-time permanent caregiver. N.T. Evidentiary Hearing, 6/21/17, at 64. Furthermore, Dr. Caprara stated that Child's foster parents have exhibited the ability to provide all of Child's needs, nurturance and support and have developed a healthy and safe bond with Child. *Id.* at 64-65.

After a thorough review of the record, the parties' briefs, the applicable law, and the well-reasoned oral opinion of the Judge Murphy, we conclude that the record supports the court's determination that OCY met its statutory burden of establishing that Father evidenced a settled purpose of relinquishing his parental claim to Child. Therefore, termination would best serve Child's needs and welfare. 23 Pa.C.S.A. §§ 2511(a)(1),(a)(2), and (b). Accordingly, we affirm as to Father's issues based on the court's oral opinion issued at the termination proceeding. In the event of further proceedings, we direct the parties to attach a copy of the notes of testimony from Father's August 21, 2017 termination hearing in which Judge Murphy set forth a verbal 1925(a) opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/17

S 79002-17

# THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

## ORPHANS' CT. NUMBER: 2017-A0012

## IN RE: ADOPTION OF J.M.W., A MINOR,
## APPEAL OF D.W., FATHER

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925 OPINION

The Court's reasoning as to the entry of the Final Decree appealed from can be found in the Notes of Testimony of August 22, 2017, at pp. 30-55.

BY THE COURT:

_____
LOIS E. MURPHY        J.J.

This Order e-filed September / 8, 2017.

_____
Secretary

30

THE COURT: Good morning. I have listened carefully to the testimony in this matter, to all of the testimony, both today and on June 21st.

I'm going to issue my opinion from the bench today.

For the record, this explanation and decision is my opinion in this matter, and this verbal statement on the record is designed to satisfy Pennsylvania Rules of Appellate Procedure 1925A. The appeal rights of the parties will be explained to the parties by their respective counsel.

Let me remind all counsel, as I'm sure you know, exceptions in this type of matter were abolished and any appeal from this matter would be a direct appeal within thirty days to the Superior Court.

The Montgomery County Office of Children and Youth has filed a petition to terminate the parental rights of the birth mother, K.L.W., of both of her children, S.A.W. and J.M.W. OCY has also filed a petition to terminate the parental rights of the birth father, D.W., who is the birth

31

father of J.M.W. OCY filed a petition to confirm the consent to adoption of K.J.G., the birth father of S.A.W., and K.J.G. signed the consent to the adoption, and the Court also reviewed that petition.

S.A.W. was born on February    ,
2008. J.M.W. was born April     of 2011. And these children are now nine years old and six years old.

As I stated earlier, on June 15th of this year, 2017, I met with and interviewed both children in chambers and on the record accompanied by their counsel.

On Wednesday, June 21st, 2017, I held in this courtroom a permanency review hearing and granted the request of the Office of Children and Youth to change the goal in the matter to adoption with respect to each of the children.

On Wednesday, June 21st, I also held a hearing and took evidence on OCY's petition to terminate the parental rights of D.W., the birth father of J.M.W.

As we noted this morning, the testimony and evidence of the caseworkers and the officers who testified and the therapist who

32

testified relevant to the permanency review hearing were incorporated today in the record with respect to the petition for termination of the parental rights of the birth mother, K.W.

The petitions to terminate the parental rights of birth mother, K.W., to each of the children were filed on February 2nd, 2017. They allege the following grounds as bases for terminating parental rights: Section 2511(a)(1), 2511(a)(2) and 2511(a)(5) of the Adoption Act.

The petition to terminate the parental rights of birth father, D.W., alleges that grounds for termination exist under Sections 2511(a)(1), 2511(a)(2) and 2511(a)(4) of the Adoption Act.

The Court must apply a two-part analysis with respect to each petition for termination of parental rights. First, the Court must consider whether the petitioner has established at least one basis for terminating the parents' rights under the grounds enumerated in Subsection A of the statute focusing attention on the conduct of the parent.

Thereafter, if the Court has determined that OCY has established by clear and

33

convincing evidence that the parents' conduct warrants termination of parental rights, then the Court must consider whether the needs and welfare of the children will be best served by termination of parental rights as required under Subsection B of the statute.

This two-part analysis is described in In re: L.M., a Superior Court decision of 2007.

The standard of clear and convincing evidence as a threshold determination of parental rights was established by the United States Supreme Court in the case of Santosky versus Kramer in 1982. This standard is defined as testimony that is so clear, direct, weighty and convincing as to enable me to come to a clear conviction without hesitancy of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries conviction to the mind or carries a clear conviction of its truth.

And there I'm citing the LaRocca Trust, a Pennsylvania Supreme Court decision from 1963.

Section 2511(a)(1) of the Act provides that termination of parental rights may occur where

34

it's established by clear and convincing evidence that the parent has failed or refused to perform parental duties for the six months preceding the filing of the petition or has evidenced a settled purpose of relinquishing parental claim to the child.

Section 2511(a)(2) provides that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or some assistance necessary for the child's physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

Under Section 2511(a)(4), the test is the child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search, and the parent doesn't claim the child within three months after the child is found.

Section 2511(a)(5) establishes a basis for terminating parental rights if the child has been removed from the care of the parent by the

35

Court or under a voluntary agreement for at least six months, the conditions which led to removal continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to removal, and termination of parental rights will best serve the needs and welfare of the child.

As I've stated, the Office of Children and Youth, as the petitioner here, bears the burden of proving each of the elements of each of the sections by clear and convincing evidence.

In this case, with respect to the allegations under Section 2511(a)(2), the primary focus of this Court will be on incapacity to parent with respect to the birth mother rather than abuse, neglect or refusal to parent.

With respect to the allegation under Section 2511(a)(4) of the statute, when a petition was filed with respect to the birth father, it is no longer the case -- although it was at the time the petition was filed -- that the identity or whereabouts of the parent is unknown, and the Court

36

dismisses that allegation.

Interpreting this adoption statute, the Pennsylvania Superior Court has identified certain irreducible minimum requirements to which all children are entitled from their parents, including adequate housing, clothing, food, love and supervision. The necessary implication is that a parent who cannot or will not meet the irreducible minimum requirements set by the Juvenile Act and the Adoption Act within a reasonable time following State intervention may properly have parental rights terminated.

Grounds for terminating parental rights may consist of a lack of capacity and not only of proved affirmative misconduct.

And I want to make that clear. I know Ms. W said and feels that she hasn't done anything wrong or anything to harm the children. The allegations in this case did not center primarily on harm or abuse towards the children or anything of that nature. And although there was some -- a moderate amount of testimony about some incidents, a couple incidents, that involved altercations, most of the testimony centered on an

37

inability to parent and mental health issues that caused a certain level of chaos and disruption in the home and a lack of stability in the home necessary for the raising of young children.

Throughout the history of OCY's involvement with these children and this family, the mental health problems of the birth mother have been the primary source of concern. Testimony revealed the birth mother has a history of erratic behavior, and numerous calls were made to the Upper Gwynedd Police Department to address conflict in the home between the birth mother, her own mother, and her sister.

A hearing was scheduled on these petitions to terminate birth mother's parental rights on April 27th, 2017, at which time birth mother's counsel requested a continuance as birth mother was hospitalized and unable to participate in the hearing. That request for a continuance was granted, and the hearing was rescheduled to June 21st, 2017.

Days prior to June 21st, counsel for the birth mother again requested a continuance as birth mother remained hospitalized since her

38

admission in April of 2017 and remained unable to participate in the hearing or assist her attorney in preparing for the hearing.

The Court granted this request for a continuance and rescheduled that hearing to today, August 22nd, 2017.

The Court had also scheduled a permanency review hearing for June 2nd and granted a continuance of that hearing until June 21st at birth mother's counsel's request.

Because of the need to see the children on a regular basis and conduct a permanency review, this Court denied a second request for a continuance of the permanency review hearing and proceeded on that hearing on June 21st.

The Pennsylvania Supreme Court has held that it is not a violation of the Constitutional rights for an individual's parental rights to be terminated due to the parent's mental disabilities or handicaps that prevent the parent from being able to provide proper care for the child. This was determined by the Pennsylvania Supreme Court, In re: William L., in 1978.

As the Supreme Court explained, a

39

decision to terminate parental rights is never to be made lightly or without a sense of compassion for the parent who seldom be more difficult when termination is based on parental incapacity.

The Supreme Court of Pennsylvania has also held that a mental impairment or disability doesn't require OCY to meet additional burdens or a higher standard to justify the Court's termination of parental rights. Rather, a duty is placed upon the parent to work with OCY and receive services in order to learn necessary parenting skills.

Where a lower court had terminated the parental rights of a mother in another case who suffered from depression and chronic mental illness, the Superior Court noted that the birth mother in that case had not been able to sustain herself in independent living and had not been able to achieve the family service plan goals that would permit reunification with her son.

That case is In re: Lily, PA Superior Court, 1998.

Due to mental illness and limited mental capacity, she could not assume the role of a parent and had not exercised that role except with

40

limited visits. And despite the provision of the best resources available through the agency to the mother, she is presently and for the foreseeable future incapable of fulfilling the role of mother and caretaker for her child.

Even where a parent desires to preserve a parental role or relationship in a case where the parent is incapable of providing basic necessities and will continue to suffer such parental incapacity, the focus of the Court must not be on the parent's wishes or desire but whether the parent can adequately meet the children's needs for security, safety, permanency and well-being.

In this case, the birth mother, K.W., has not been able to sustain herself and live independently and has not been able to meet the needs of her two children as a parent throughout their lives. From 2010 until 2012, when OCY first opened a case to provide services to this family, OCY established a safety plan for the children that assured that the children would not be left unsupervised with the birth mother. The children's maternal grandmother had custody of the children from that time, from the time in 2012 when the OCY

41

case was closed, that first case, until February of 2016 when the children were removed from maternal grandmother's home and placed in foster care.

Although the birth mother was for most of that time a member of the same household, she was not consistently nor did she have custody of or parental responsibility for the children. Indeed, birth mother's presence in the household created problems and increased the conflict and chaos in the home to the detriment of the two children.

In summary, the birth mother, K.W., has not been able to sustain and support herself consistently, has suffered from severe mental health issues, which the Court notes she is strenuously attempting to address, and has recently spent quite a bit of time in the hospital and is attempting to achieve stability for herself. Her health issues have resulted in lengthy hospitalization, and she has not been capable of providing for her children as a parent. For more than six years she has not provided the children with a home, food, clothing or consistent nurturing or loving environment.

While her recent hospitalization for her mental health concerns is unfortunate and the

42

Court acknowledges that she loves her children and doesn't fault her for seeking needed medical care, nevertheless, it is the hospitalization and her absences from the children's lives that are relevant to a determination whether she has or lacks the capacity to provide for her children as a parent.

This Court concludes that the Office of Children and Youth has met its burden demonstrating by clear and convincing evidence a basis for terminating the parental rights of K.W. with respect to each of the two children in that she lacks the capacity to parent the children and, as a result, the children have been without essential parental care, control or some assistance necessary for their physical and mental well-being, and the conditions and causes of the incapacity cannot or will not be remedied by the parent.

The Court notes that Ms. W. has stated passionately how much she loves the children, which I believe, and that she at this time is intending to get a new apartment and wishes to parent the children on her own in her new home. However, she having never had sole custody of the children and the opportunity and obligations that go

43

with parenting on a full-time basis, I cannot conclude that she's prepared to fulfill those responsibilities or has the capacity to do so.

In addition, the Court finds that the Office of Children and Youth has established by clear and convincing evidence an additional ground for termination of parental rights under Section 2511(a)(5) in that the conditions that led to the removal of the children from the home continue to exist, the time periods in the statute have long been met in that the children have now been in care for eighteen months, and the needs and welfare of the children will best be met by termination of the parental rights.

Turning to the birth father, D.W. D.W. is the birth father of J.M.W. who is now six years old. He has never met J.M.W., never lived with her, never provided for her in any way, never sent any money to support her, never sent her a gift or clothing or any items of any kind.

D.W. candidly admitted to OCY and to the Court his criminal record, which includes incarceration for making terroristic threats and numerous violations of parole and probation, as well

44

as a guilty plea to charges of corrupting a minor.

OCY had concerns due to the nature of his criminal activity. D.W. testified that he had a sexual relationship with K.W. and that in 2011 she had told him that she was pregnant and then told him that baby girl had been born and he was the father.

He testified he was incarcerated in 2011, approximately the time of the date of birth of J.M.W., but he was released on probation in 2012. However, he was incarcerated several times again between 2012 and 2015 as a result of violations of his terms of his probation.

He testified that he attempted to contact K.W. when he was released from prison in July of 2015 but that the maternal grandmother would not allow him to see J.M.W. or call the home, and he testified he was advised by the police not to contact the birth mother, maternal grandmother or the child due to his probationary status and his history as a, quote, low intensity, unquote, sex offender.

He stated that his plan had been trying to reconnect with K.W. and his daughter J.M.W. after his incarceration and probation were

45

over. He testified he completed his probation and parole on March 21st, 2016. Nevertheless, he did not contact K.W. or J.M.W. or the Office of Children and Youth for more than a year after this date.

Throughout the period from the date of birth of J.M.W. until March of 2017, D.W. never filed a custody petition, never contacted OCY, never requested visits with J.M.W., never provided any support for J.M.W. and has never met J.M.W.

To his credit, D.W. testified today that he has completed parenting classes, that this Friday he has scheduled an intake appointment for a psych and drug and alcohol evaluation, that he's currently employed working as a contractor, and that he rents a room, has his own room renting a room in North Wales. He did not testify that he has a home where he would be ready and able to bring the children.

He did testify that after several difficulties he finally has also straightened out his health insurance problems which enabled him to schedule an intake appointment for drug and alcohol evaluation and psych evaluation.

I don't think it's necessary that I go

46

in-depth into the history of OCY's attempts to identify the birth father. Suffice it to say that initially K.W. and maternal grandmother provided OCY with no information, but, in early 2017, K.W. provided the name of D.W. It took some time until March of 2017, until OCY was able to get his name spelled correctly, identify him and reach him by a letter sent in March 2017.

At that time, OCY requested that D.W. participate in a paternity test which confirmed that he is the birth father of J.M.W.

D.W. candidly admitted to the Court that he has a history of depression, that he currently drinks several beers each day and that he has had a positive test for alcohol. He did obtain a psychiatric evaluation which included recommendations for individual therapy.

As I stated earlier, the Superior Court has determined that the parental duty requires that a parent act affirmatively with good faith interest and effort and not yield to every problem even in difficult circumstances. A parent must utilize all of the available resources and exercise reasonable firmness in resisting obstacles placed in

47

the path of maintaining or, in this case, developing a parent/child relationship.

Where a parent has not had contact with a child for a significant time and wishes to demonstrate that renewed contact is sufficient to establish a positive parent/child relationship, the parent must demonstrate a serious intent on the part of the parent to recultivate a parent/child relationship and must also demonstrate a willingness and capacity to undertake the parental role.

In this case, it is challenging in that the children have suffered some trauma from their history, and one of the children in particular is under the care of a therapist, licensed clinical psychologist, who testified before the Court regarding the needs of the children and that it would be disruptive to the children's own treatment to have the children meet a father at this time who seeks to meet the children in this case, J    .

Additionally, D.W. has not demonstrated to the Court that he is prepared and ready to fulfill a parental role. Although he is employed and he has made positive strides, the lengthy time that he waited before contacting anyone

48

seeking any kind of visits with J.M.W. and her needs at this time all indicate that it is neither in her interest nor has he established that he is capable of parenting, that there is any parent/child relationship, and that he has the ability to provide a safe, stable and nurturing environment and meet the irreducible minimum requirements to fulfill his role serving as a parent in such a role.

In this case, based upon the evidence that the Court heard today and on June 21st, the Court determines that OCY has established by clear and convincing evidence that the birth father, D.W., has failed to perform any parental duties for a period of more than six years, far more than the six months prior to the filing of the petition for termination of the parental rights.

In addition, the Court determines that the birth father doesn't have a home which includes space for a child and is not ready and prepared to parent J.M.W. and provide the safety, stability and security that a child needs, and has not taken sufficient steps to address his drinking and other issues he may have to prepare himself to parent J.M.W. As a result, the Court finds based upon the

49

evidence presented that D.W. is not capable of performing parental duties with respect to J.M.W. and that OCY has met its burden of proof of clear and convincing evidence for termination of parental rights under both Section 2511(a)(1) and Section 2511(a)(2) of the Adoption Act.

The fact that D.W. was incarcerated and under supervision for a significant period of time doesn't excuse D.W. for his failure to have any contact with or provide any support for J.M.W. The Pennsylvania Supreme Court has explained that a parent has an affirmative duty to love, protect and support his child and make an effort to maintain communication and association with the child.

There I'm quoting from In re: Adoption of S.P., a Pennsylvania Supreme Court opinion.

With respect to a petition for termination under Section 2511(a)(2) alleging parental incapacity, the Supreme Court stated we now definitively hold an incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control and

50

assistance, and the length of the remaining confinement can be considered highly relevant to whether conditions and causes of incapacity, abuse or neglect cannot or will not be remedied by the parent.

In this case, D.W. is no longer incarcerated, but the lengthy term of his incarcerations and repeated incarcerations, as well as his failure to contact J.M.W. or the agency following his release from probation and parole, indicate that he has not provided and has failed to provide for J.M.W. as a parent.

This Court must also consider whether, even when not incarcerated, the parent has provided or has failed to provide the child with the essential parental care, control or assistance necessary for her physical health and mental well-being. Parents are required to make diligent efforts towards the reasonable prompt assumption of full parental responsibilities. A parent's determination to cooperate after a long period of uncooperativeness regarding the necessity or availability of services may properly be rejected as untimely or disingenuous.

51

The focus in considering the petitions to terminate parental rights thus far has been under Section 2511(a) upon each of the parents. But under Section 2511(b), the focus turns to the children. If the grounds for termination under Subsection A have been met, as they have been established here, the Court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The emotional needs of the child have been properly interpreted to include intangibles such as love, comfort, security and stability.

The Pennsylvania Supreme Court has held that a determination of the child's needs and welfare requires the consideration of the emotional bonds between the parent and the child. The utmost attention shall be paid to the concerning effect on the child of permanently severing the parental bond. In considering the children's needs and welfare, the Court must consider whether a parental bond exists to such an extent that severing this natural relationship would be contrary to the needs and welfare of the child.

In this case, the testimony clearly

52

establishes that although there is affection and the birth mother loves the two children, the birth mother has not maintained sufficient and consistent contact such that there is a healthy parental bond between each of the children and the birth mother.

The caseworkers observed that the children's needs are met by the foster parents and that the birth mother acted more like an older sister than like a parent.

The birth father, D.W., by contrast, has no relationship with J.M.W. whatsoever, having never met her, visited her, supervised her, nor provided for her in any way. There is simply no parental bond to consider, and there will be no detriment to J.M.W. as a result of termination of the birth father's legal rights.

In this case, the two birth parents have not provided a home, have not met S.A.W. and J.M.W.'s needs and have not maintained a consistent and strong parent/child relationship. The parents' desires to start over at this time in each case is insufficient for this Court to have confidence that they could meet the children's needs for consistent and reliable love, affection, support, structure and

53

responsibility.

I conclude, based upon all of the testimony, that the emotional needs and welfare of each of the children can best be met by termination of the parental rights of both birth parents so that the children may be freed for adoption and permanency, and I conclude that the children will not suffer a detriment as a result of the termination of the parental rights of either the birth father or the birth mother.

I do find, based upon the testimony of the caseworkers, that a bond has developed between the foster parents and the children.

Therefore, I find from all of the evidence and testimony that termination of the birth father's parental rights with respect to J.M.W. and termination of the birth mother's parental rights with respect to both children best serve the needs and welfare of each of the children and will not irreparably harm either of the children.

On this day, based upon all of these findings of fact and the law, as I've applied it, I must enter a final decree terminating the parental rights of the birth mother, K.L.W., to each child

54

and terminating the parental rights of birth father, D.W., to J.M.W.

We will remind the parties that the period for any appeal is thirty days to the Superior Court of Pennsylvania.

May I ask counsel? Is there anything else that I should make clear for the record in this case?

MS. TEREBELO: Confirming the consent.

THE COURT: As I've stated at the very outset, I also have a petition to confirm the consent of the birth father with respect to S.A.W. I will sign that final decree confirming that consent as well.

MS. TEREBELO: Nothing further, Your Honor.

MR. CULLEN: Nothing for the record.

MR. PANCIO: Nothing, Your Honor.

THE COURT: Thank you very much.

(At 11:23 a.m., the proceedings were concluded.)

- - -

55

<u>C E R T I F I C A T E</u>

I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me in the above cause and that this is a correct transcript of the same.

MARK MANJARDI
Official Court Reporter

Case# 2017-A0012-9 Received at Montgomery County Register of Wills Office on 09/14/2017 9:43 AM, Fee = $0.00